

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAR 13 PM 4:08

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GREGORY F. PLAIDEAU and FRANCIS PLAIDEAU | * * * | CIVIL ACTION |
| versus | * * | NO. 00-2057 |
| | * | SECTION "B" |
| DAIMLER CHRYSLER CORPORATION and DOLLAR RENT A CAR SYSTEMS, INC. | * * * | MAG. F |

\* \* \* \* \* \* \* \*

## MEMORANDUM OF FACT AND LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes plaintiff herein, **Gregory F. Plaideau**, who respectfully submits the following opposition to the Motion for Summary Judgment filed herein by defendant, **Daimler Chrysler Corporation**.

### I.
### FACTS

This lawsuit arises out of an automobile accident which occurred on a rural two-lane road in the State of Alabama. Immediately prior to the accident, the plaintiff, Gregory Plaideau ("Plaideau"), with three (3) other passengers, was driving a 1999

Dodge Neon which had been rented from Dollar Rent A Car in Louisiana. Immediately prior to the accident, Plaideau was traveling anywhere from 55 to 60 miles per hour (transcript of the deposition of Gregory Plaideau, taken on February 7, 2001, hereinafter referred to as "Plaideau Deposition", at p. 26). At some point, Plaideau spotted a deer in the road, at which point he hit his brakes attempting to stop before hitting the deer. He was unsuccessful, but did manage to cut the wheel sharply to the left to avoid a head-on impact with the deer. The deer struck the right side of his car, which continued off the road, over an embankment and into a ditch. Plaideau stated that he hit the opposite embankment of the ditch head-on with the front of his car. The force of the impact caused Plaideau's upper body to move forward, his head striking either the windshield or the steering wheel, eventually causing damages to Plaideau's head, face, jaw, neck, and lower back. Although Plaideau was not sure at which speed he hit the ditch embankment, he believed that he had now slowed down that much from the original 55 to 60 miles per hour he had been going when he first saw the deer.

At the time of the impact the air bag system in the steering wheel of the Dodge Neon failed to deploy. The air bag should have deployed in that situation because of the rapid deceleration caused by the head-on impact into the embankment at a speed greater than the speed for which the air bag was designed to deploy, as set forth in the vehicle's operating manual.

The sole basis for plaintiff's lawsuit is that the failure of the air bag to deploy in the Chrysler vehicle was a manufacturing defect of that vehicle. Therefore, plaintiff is entitled to recover damages caused by that defect pursuant to La. R.S. 9:2800.51, *et seq*.

## II.
## ARGUMENT

Defendant, Daimler Chrysler Corporation ("Chrysler"), has moved for summary judgment on all issues. Chrysler states that it is entitled to summary judgment because Plaideau cannot prove either a defect in the automobile nor the fact that any such defect caused Plaideau's injuries. However, Chrysler's argument is based solely on the fact that Plaideau has produced no expert witnesses to opine that the air bag system in the automobile was defective. Plaideau respectfully submits that this does not entitle Chrysler to a summary judgment for the following reasons.

In order to prevail in this matter, Plaideau must prove that the vehicle manufactured by Chrysler in this case was "unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant. . ." La. R.S. 9:2800.54,A. Furthermore, under Louisiana law, a product is unreasonably dangerous if, and only if:

(1) The produce is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
(2) The product is unreasonably dangerous in design as provided in R.S. 9.2800.56;

(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or

(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

La. R.S. 9:2800.54,B

In this case, Plaideau is alleging that the product, the Dodge Neon, was unreasonably dangerous in construction or composition when it was manufactured by Chrysler.

Louisiana law further provides that:

A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.

It is Plaideau's contention that because the air bag system was designed to deploy and protect the occupants of the vehicle from a head-on collision in a crash at speeds in excess of a threshold speed, which Plaideau has alleged was exceeded in this case, that the failure of this bag to deploy was obviously a defect.

Contrary to Chrysler's argument, Plaideau is not required to employ expert testimony to examine the vehicle or the air bag system in order to prevail. As was stated in Chrysler's memorandum, the vehicle was towed and resold, and is no longer available for inspection by either the plaintiff or the defendant. However, Louisiana law has

recognized that a plaintiff may prevail on a products liability case on the principle of *res ipsa loquitu*. In ***State Farm Mutual Automobile Insurance Company v. Wrap-On Company, Inc.***, 626 So.2d 874 (La.App. 3d Cir. 1994); **writ denied**, 93-2988 (La. 1/28/94), 630 So.2d 800, the plaintiff brought an action under the Louisiana Product Liability Act (La. R.S. 9:2800.51, *et seq.*), against the manufacturer of a heat tape which had caused a mobile home in which it was installed to burn to the ground. In that case, the defendant had expert witnesses who examined the heat tape and opined that the heat tape had not malfunctioned and was not defective. However, the court found that, all other reasonable potential causes of the fire having been disproved, that it could be inferred that the defect in the heat tape had caused the fire on the basis or *res ipsa loquitur*:

> As all other sources of fire were rules out, it is no broad assumption to think that the heat tape was the source of the fire. Nor is a dramatic leap of faith required to believe that a malfunction in the heat tape caused it to ignite, as no other possible reason for its ignition was offered. No doubt the malfunction and ignition of the heat tape is not in accord with the "manufacturer's specifications or performance standards for the product." LSA-R.S. 9:2800.55. Thus, we conclude that plaintiffs successfully utilized the doctrine of *res ipsa loquitur* to prove that the heat tape was unreasonably dangerous in construction or composition and that this defect caused its damages.

*Id.* at pp. 878-879.

As early as 1971, the Louisiana Supreme Court recognized that the doctrine of *res ipsa loquitur* could be used in a products liability case. In ***Weber v. Fidelity Casualty***

*Insurance Company of New York*, 259 La. 599; 250 So.2d 754 (1971), the court found that a batch of cattle dip was defective because, all facts being considered, it was the "most probable cause of the damages." Also in ***Guidry v. Louisville Tin & Stove Company, Inc.***, 613 So.2d 1114 (La.App. 5th Cir. 1993), the manufacturer of a gas operated floor furnace was held liable for a fire caused by a defect in the furnace's valve mechanism despite the fact that no expert could identify the defect. The trial court found that a defect was the most plausible explanation for the fire and that a trier of fact could infer from circumstantial evidence that a defect existed in the valve mechanism and that did cause the fire.

This reasoning has also been extended to the federal courts in a similar case. In ***Sylvestri v. General Motors Corporation***, 210 F.3d 240 (4th Cir. 2000), which, incidentally, also involved the failure of an air bag to deploy, the court held that the plaintiff need not prove that a defect existed in the air bag system, especially where the product involved was complicated in nature. *Id.* at p. 243. The court further held that the plaintiff could prove that the product was defective by circumstantial evidence. *Id.* at p. 244. This case was before the appellate court on a motion for summary judgment which had been granted. In overturning that judgment, the court stated, "but in order to justify dismissing a case because the plaintiff has failed to present expert testimony, a court must find that the facts necessary to establish a *prima facie* case cannot be

presented to any reasonably informed fact finder without the assistance of expert testimony." *Id.* at p. 244.

It should be borne in mind that in *Sylvestri*, the defendant's experts had, in fact, examined the exact air bag system which plaintiff alleged had failed to deploy. In our case, none of Chrysler's army of experts examined the air bag system itself. Thus, they are, in fact, relying just as much on circumstantial evidence as is the plaintiff. Therefore, there is most certainly a triable issue of fact as to whether or not the air bag system was defective which should be presented to the jury for determination. At that point, Chrysler may present its experts and may well convince a jury that they are correct. However, plaintiff is also entitled to present the jury with his theory based on circumstantial evidence that the circumstances existed in which by the manufacturer's own admission the air bag should have deployed yet the air bag did not deploy and was therefore defective.

Chrysler's motion contains affidavits of several expert witnesses in an attempt to convince this Court that there are no triable issues of fact in this case. However, none of these expert witnesses actually examined the automobile which plaintiff alleges was defective. Also, none of the experts examined the accident scene as it existed on the day of the accident. Mr. Corwin, for example, visited the accident scene on January 3, 2001, approximately six (6) months after the accident. Based on this, he gives his opinion as to the dynamics of the crash as influenced by the shape and size of the ditch. However,

there is nothing in his affidavit to indicate that he saw the ditch as it existed on the day of the accident. Six (6) months later any number of things could have happened to alter the shape and size of that ditch including erosion, work by road crews, etc. Yet without even knowing the speed at which Plaideau was going when he hit the ditch, Mr. Corwin sees fit to render an opinion that the, "deceleration experienced by the Dodge Neon was well below the 'all-fire' threshold (16 miles per hour) and likely did not exceed the 'no-fire' threshold (10 miles per hour)". How he would know this six (6) months after the day of the accident is amazing. In any event, it does conflict with plaintiff's testimony and presumably those who were with him in the car that he was traveling in excess of 50 miles per hour when he put on his brakes. Again, we have a triable issue of fact for the jury to decide.

The affidavit by Mr. Salliotte also states that in his opinion the air bag did not deploy because the automobile did not hit the embankment at speeds in excess of 16 miles per hour. However, this opinion is based solely on his reading of the police report of the accident, the photographs of the damage to the vehicle and the records of the post-accident repair. Again, this conflicts with Plaideau's sworn testimony and at very least involves an issue of fact to be tried.

The affidavit of Michael J. Seventko also gives the same opinion based on the same basis.

## III.
## CONCLUSION

Chrysler has failed to show that it is entitled to a summary judgment in this matter. The materials presented to the Court to show that there are no triable issue of fact in this case, in fact, show that there *are* issues of fact to be tried. Although Chrysler believes that Plaideau should not prevail because he has not presented any expert testimony that there was a defect in the automobile air bag system, the cases cited above indicate that this is not an absolute requirement. In addition, the experts presented by Chrysler rely just as much on circumstantial evidence as the plaintiff does. Therefore, it is respectfully submitted that Chrysler's motion be denied at Chrysler's costs.

Respectfully Submitted,
**DAIGLE, SULLIVAN, DUPRÉ & ALDOUS**
*A Professional Law Corporation*

*/s/ P. Keith Daigle*

**P. KEITH DAIGLE**, T.A. (La.Bar Roll No. 4457)
One Lakeway Center, Suite 1470
3900 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone: (504) 830-3990
Telecopier: (504)830-3998
   or
321 North Vermont Street, Suite 209
Covington, Louisiana 70433
Telephone: (985)898-1909
Telecopier: (985)898-3481
**ATTORNEY FOR PLAINTIFF,
GREGORY F. PLAIDEAU**

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY**, that a copy of the above and foregoing has been forwarded by hand to:

    **Mark N. Bodin**
    **McGlinchey, Stafford**
    P.O. Box 60643
    New Orleans, LA 70160-0643
    **Attorney for Defendant, Daimler Chrysler Corporation**

    **Susan Lang**
    Attorney at Law
    530 Natchez Street, Suite 250
    New Orleans, LA 70130
    **Attorney for Defendant,**
    **Dollar Rent A Car Systems, Inc.**

this 13th day of March, 2001.

                                                                 **P. KEITH DAIGLE**